MDL  1426

JUL - 5 2001

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE AUTOMOTIVE REFINISHING | : | |
| PAINT ANTITRUST LITIGATION | : | MDL Docket No.: _____ |
| | : | |

**MOTION OF PHILADELPHIA PLAINTIFFS FOR TRANSFER AND
CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Plaintiffs Car Color & Auto Body Supply Ltd., Golden Motors, Inc. t/a Golden Chrysler

Plymouth, Randall Boltz d/b/a Randy's Paint & Body Werkes, Sajon Investments, Inc. d/b/a

Greensboro Body Co. and Howard J. Walters d/b/a Randolph Auto Supply Co. (collectively,

"Philadelphia Plaintiffs") hereby respectfully move the Judicial Panel on Multidistrict Litigation

for an order: (a) transferring all related actions to the United States District Court for the Eastern

District of Pennsylvania; and (b) consolidating those actions for coordinated pretrial proceedings

pursuant to 28 U.S.C. § 1407. A list of all pending related actions is attached hereto as Schedule

A.

Philadelphia Plaintiffs, in support of their motion for transfer and consolidation for

coordinated pretrial proceedings, aver as follows:

OFFICIAL FILE COPY    IMAGED JUL 11 '01

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL - 5 2001

FILED
CLERK'S OFFICE

1.      The actions for which transfer and consolidation are proposed arise out of the

same conduct and allege virtually identical claims.  Each action is brought on behalf of direct

purchasers of automotive refinishing paint and alleges that defendants conspired, in violation of

the federal antitrust laws, to maintain the prices for automotive refinishing paint at artificially

inflated levels.

2.      The actions listed on Schedule A are all premised on virtually identical factual

allegations and therefore involve "one or more common questions of fact," including:

(a)      Whether defendants engaged in a combination and conspiracy among

themselves to fix, raise, maintain or stabilize prices of automotive refinishing paint sold in the

United States;

(b)      The duration and extent of the combination or conspiracy alleged in this

Complaint;

(c)      Whether the alleged combination or conspiracy violated Section 1 of the

Sherman Act;

(d)      Whether defendants and their co-conspirators actively concealed the

combination or conspiracy from plaintiff and the other class members;

(e)      The effect of defendants' combination or conspiracy on the prices of

automotive refinishing paint sold in the United States during the Class Period; and

(f)      The appropriate measure of damages sustained by plaintiff and other

members of the Class.

3.      The proposed transfer and consolidation "will be for the convenience of parties

and witnesses and will promote the just and efficient conduct" of these actions.

4.     Consolidation of the actions before a single court will conserve judicial resources, reduce the costs of litigation, prevent potentially inconsistent pretrial rulings, eliminate what would otherwise be duplicative discovery, and permit the cases to proceed to trial more efficiently.

5.     Each of the related actions is in the very early stages of litigation in that no responsive pleadings have been filed and no discovery has been conducted.

6.     Seven of the ten related actions are currently pending in the Eastern District of Pennsylvania, far more than any other district.

7.     The United States Department of Justice, Antitrust Division's investigation into price-fixing of automotive refinishing paint is based in Philadelphia, and the federal grand jury convened in connection with this investigation is also based in Philadelphia.

8.     The Eastern District of Pennsylvania is conveniently located to each of the defendants and is experienced in handling antitrust class actions and other complex litigation.

9.     Movants respectfully submit that the Eastern District of Pennsylvania is best suited to preside over the coordinated pretrial proceedings of these actions.

10.     Philadelphia Plaintiffs' motion is based on the accompanying Memorandum of Law in Support of Transfer and Consolidation, the pleadings and papers on file, and such other materials as may be presented to the Panel in advance of or at the time of any hearing in this matter.

Dated:  June 27, 2001

Respectfully submitted,

Leonard Barrack
Steven A. Asher
Jeffrey B. Gittleman
Joseph H. Meltzer
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
(215) 963-0600

**Attorneys for Plaintiff Golden Motors,
Inc. t/a Golden Chrysler Plymouth**

Warren Rubin
**LAW OFFICES OF
   BERNARD M. GROSS, P.C.**
1500 Walnut Street
Sixth Floor
Philadelphia, PA  19102
(215) 561-3600

**Attorneys for Plaintiff Car Color & Auto
Body Supply Ltd.**

Joseph C. Kohn
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, PA  19107
(215) 238-1700

**Attorneys for Plaintiff Sajon Investments,
Inc. d/b/a Greensboro Body Co.**

Dianne M. Nast
**RODA AND NAST, P.C.**
801 Estelle Drive
Lancaster, PA 19601

**Attorneys for Plaintiff Randall Boltz
d/b/a Randy's Paint & Body Werkes**

Richard A. Lockridge
W. Joseph Bruckner
**LOCKRIDGE GRINDAL
    NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401

**Attorneys for Plaintiff Howard J. Walters
d/b/a Randolph Auto Supply Co.**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL - 5 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| IN RE AUTOMOTIVE REFINISHING PAINT ANTITRUST LITIGATION | : : : | MDL Docket No.: _____ |

PHILADELPHIA PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR TRANSFER
AND CONSOLIDATION OF RELATED ANTITRUST ACTIONS
TO THE EASTERN DISTRICT OF PENNSYLVANIA

## I.   INTRODUCTION

Pursuant to Rule 7.2(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, plaintiffs Car Color & Auto Body Supply Ltd., Golden Motors, Inc. t/a Golden Chrysler Plymouth, Randall Boltz d/b/a Randy's Paint & Body Werkes, Sajon Investments, Inc. d/b/a Greensboro Body Co. and Howard J. Walters d/b/a Randolph Auto Supply Co. (collectively, "Philadelphia Plaintiffs")[1] respectfully submit this memorandum of law in support

---

[1] Movants are plaintiffs in the following actions:  Car Color & Auto Body Supply Ltd. v. PPG Industries, Inc., et al., No. 01-CV-2830 (E.D. Pa.); Golden Motors, Inc. t/a Golden Chrysler Plymouth Jeep v. PPG Industries, Inc., et al., No. 01-CV-2906 (E.D. Pa.); Boltz v. PPG Industries, Inc., et al., No. 01-CV-3020 (E.D. Pa.); Sajon Investments, Inc. d/b/a Greensboro Body Co. v. PPG Industries, Inc., et al., No. 01-CV-3174 (E.D. Pa.); Howard J. Walters d/b/a Randolph Auto Supply Co. v. PPG Industries, Inc., et al., No. 01-CV-3206 (E.D. Pa.).

of their motion for transfer and consolidation, pursuant to 28 U.S.C. § 1407, of all related

antitrust actions to the Eastern District of Pennsylvania.

Currently, ten virtually identical antitrust actions (collectively, "related actions") have

been filed against the manufacturers of automotive refinishing paint. Seven of the ten related

actions have been filed in the Eastern District of Pennsylvania, two actions were filed in the

Western District of Pennsylvania and a single action was filed in the District of New Jersey. See

Schedule A to Philadelphia Plaintiffs' Motion for Transfer and Consolidation. Movants

respectfully submit that, for the reasons set forth herein, the most appropriate forum for the

pretrial prosecution of these actions is the Eastern District of Pennsylvania.

## II.   **BACKGROUND**

Automotive refinishing paint is a paint formulation that is manufactured, marketed and

sold predominately to after-market entities such as automobile dealerships, automotive paint

distributors or jobbers, and autobody shops. Used primarily in collision repair facilities

including dealer autobody shops, automotive refinishing paint differs from Original Equipment

Manufacturers ("OEM") paint systems in both its chemical composition and application.

Automotive refinishing paint is applied at low temperatures and often by hand with the objective

of realizing the closest possible match to the original finish applied by the OEM paint system,

whereas OEM paint systems are machine-applied and hardened at high temperatures (130-

170°C), and are suitable only for bare car bodies.

The domestic market for automotive refinishing paint exceeds $1 billion annually and is

oligopolistic in nature, being dominated by the five defendant-manufacturers:  PPG Industries,

Inc., E.I. DuPont de Nemours and Company, Sherwin-Williams Company, BASF

Aktiengesellschaft and Akzo Nobel N.V.  Recent acquisitions, including PPG's acquisition of

ICI Autocolor from ICI Paints and Dupont's acquisition of Herberts of Germany from Hoechst AG, have further consolidated the supply base.

In January 2001, the Antitrust Division of the United States Department of Justice commenced an investigation, based in Philadelphia, into price fixing in the automotive refinishing industry. The Justice Department has subpoenaed documents from defendants and convened a grand jury to hear and analyze evidence. According to published reports, the defendants have acknowledged the government investigation and have denied any wrongdoing. See Exhibit A. PPG disclosed that "the antitrust division has initiated a grand jury investigation to determine whether there has been unlawful conduct affecting the sale of automotive-refinishing products in the United States during the last five years."

All of the related actions were filed subsequent to the commencement of the government investigation. Each is a class action brought on behalf of direct purchasers of automotive refinishing paint from the defendant-manufacturers and alleges that the defendants conspired to fix, raise, maintain or stabilize the prices at which automotive refinishing paint were sold in the United States, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

## III.   **ARGUMENT**

Pursuant to 28 U.S.C. § 1407, transfer for coordinated pretrial proceedings is appropriate because it will promote the just and efficient conduct of these actions and because the related actions involve common questions of law and fact. The Eastern District of Pennsylvania is the most appropriate transferee forum since a clear majority of the actions (seven of ten), including the first filed action, are pending in this district. Moreover, the Eastern District of Pennsylvania, which encompasses the city of Philadelphia, is the preferable forum because it is: (i) the location where the Department of Justice's investigation, including the federal grand jury convened in

- 3 -

connection with the investigation, is based; (ii) conveniently located and readily accessible to all

parties and potential witnesses; and (iii) experienced in handling antitrust class actions and other

complex litigation.

### A.   Consolidation in a Single District is Appropriate

Transfer is appropriate under 28 U.S.C. § 1407 which authorizes the transfer of civil

actions pending in different federal district courts and involving common questions of fact to a

single federal district court for coordinated or consolidated pretrial proceedings.  Section 1407(a)

provides, in relevant part:

> When civil actions involving one or more common questions of
> fact are pending in different districts, such actions may be
> transferred to any district for coordinated or consolidated pretrial
> proceedings.  Such transfers shall be made by the judicial panel on
> multidistrict litigation authorized by this section upon its
> determination that transfers for such proceedings will be for the
> convenience of  parties and witnesses and will promote the just and
> efficient conduct of such actions.

The requirements for transfer under section 1407 are clearly satisfied here.  The ten related

actions are characterized almost entirely by common questions of fact.  In addition, transfer and

consolidation will promote convenience for the parties and efficiency in the pretrial proceedings

by eliminating duplicative discovery and the potential for inconsistent rulings, including

determinations on class certification.

### 1.   The Related Actions Involve Common Questions of Fact

The first requirement, that the actions to be transferred involve common questions of fact,

is met.  Common questions exist where "two or more complaints assert comparable allegations

against identical defendants based on similar transactions and events."  In re Air West, Inc. Sec.

Litig., 384 F. Supp. 609, 611 (J.P.M.L. 1974); see also In re Cuisinart Food Processor Antitrust

Litig., 506 F. Supp. 651, 654-55 (J.P.M.L. 1981).  The cases before this Panel contain numerous

common questions of law and fact, including:

        (a)     Whether defendants engaged in a combination and conspiracy among

themselves to fix, raise, maintain or stabilize prices of automotive refinishing paint sold in the

United States;

        (b)     The duration and extent of the combination or conspiracy alleged in this

Complaint;

        (c)     Whether the alleged combination or conspiracy violated Section 1 of the

Sherman Act;

        (d)     Whether defendants and their co-conspirators actively concealed the

combination or conspiracy from plaintiff and the other class members;

        (e)     The effect of defendants' combination or conspiracy on the prices of

automotive refinishing paint sold in the United States during the Class Period; and

        (f)     The appropriate measure of damages sustained by plaintiff and other

members of the Class.

The factual issues to be determined in each of the actions are identical, making transfer

and consolidation highly appropriate.  See, e.g., In re "Factor VIII or IX Concentrate Blood

Prods." Prods. Liab. Litig., 853 F. Supp. 454, 455 (J.P.M.L 1993) (common questions of fact

existed regarding defendants' conduct); In re Cuisinart Food Processor Antitrust Litig., 506 F.

Supp. at 655 (noting that transferred actions "share[d] numerous questions of fact concerning the

existence vel non of alleged conspiracy and its scope, participants, means of operation and

effects"); In re Gas Meter Antitrust Litig., 464 F. Supp. 391, 393 (J.P.M.L. 1979) (ordering

transfer where actions shared "common questions concerning the alleged existence of a

conspiracy to fix prices"); In re Cement and Concrete Antitrust Litig., 437 F. Supp. 750, 752

(J.P.M.L. 1977) (ordering transfer after observing, inter alia, "the substantial amount of

discovery shared by all actions concerning the existence, scope and effect of conspiratorial

activity"); In re Anthracite Coal Antitrust Litig., 436 F. Supp. 402, 403 (J.P.M.L. 1977) (ordering

transfer after finding that, "[a]s is often true in multidistrict antitrust actions, the actions . . .

raise[d] common factual questions concerning the existence, scope and effect of the alleged

conspiracy");  In re Hawaiian Hotel Room Rate Antitrust Litig., 438 F. Supp. 935, 936 (J.P.M.L.

1977).

These actions involve numerous common questions of fact that support transfer and

consolidation to the Eastern District of Pennsylvania.

### 2.    Transfer and Consolidation Will Promote the Just and Efficient Conduct of the Related Actions

Transfer and consolidation is appropriate because coordinating the pretrial proceedings

will promote the just and efficient conduct of these actions.  In light of the overlapping factual

allegations of a price-fixing conspiracy, and especially given that discovery has not yet begun in

any of these actions, transfer under Section 1407 will avoid duplicative discovery and "result in a

substantial savings of judicial time and resources."  In re Japanese Elec. Prods. Antitrust Litig.,

388 F. Supp. 565, 567 (J.P.M.L. 1975); see also In re Gas Meter Antitrust Litig., 464 F. Supp. at

393 (noting that transfer of actions alleging price-fixing conspiracies "to a single district under

Section 1407 will ensure the streamlining of discovery and all other pretrial proceedings as

well."); In re Fine Paper Antitrust Litig., 453 F. Supp. 118, 121 (J.P.M.L. 1978) ("Section 1407

transfer . . . is necessary in order to prevent duplicative discovery and eliminate any possibility of

conflicting class and other pretrial rulings.").

The plaintiffs in each action will seek to depose many of the same individuals from the various defendants and request production of a substantially similar set of documents. Failing to consolidate these actions will therefore result in duplicative discovery efforts, requiring witnesses to appear for multiple depositions and defendants to produce several sets of the same documents. The consolidation and coordination of these actions would avoid this inconvenience and needless waste of resources. See In re Multi-Piece Rim Prods. Liab. Litig., 464 F. Supp. 969, 974 (J.P.M.L. 1979). Moreover, the corresponding savings in time and expense would confer benefits upon both the plaintiffs and defendants. See In re Cuisinart Food Processor Antitrust Litig., 506 F. Supp. at 655 (transferring actions would result in "significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities"); see also In re Amino Acid Lysine Antitrust Litig., 910 F. Supp. 696, 698 (J.P.M.L. 1995) (consolidation and coordination is appropriate to "conserve the resources of the parties, their counsel and the judiciary"); In re Uranium Indus. Antitrust Litig., 458 F. Supp. 1223, 1230 (J.P.M.L. 1978).

Transfer and consolidation in the Eastern District of Pennsylvania will serve to coordinate the pretrial proceedings and promote the just and efficient conduct of these actions.

### 3.   Consolidation Will Prevent Inconsistent Rulings

Transfer and consolidation will also eliminate the possibility of inconsistent rulings on pretrial determinations such as class certification. It is well settled that transfer and coordination is appropriate where the possibility of inconsistent rulings on class certification issues exists. See, e.g., In re Sugar Indus. Antitrust Litig., 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (noting that the Panel "has consistently held that transfer of actions under section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists"); see also In re

Corn Sweetners Antitrust Litig., 910 F. Supp. 696, 699 (J.P.M.L. 1995) ("Centralization under
Section 1407 is thus necessary in order to . . . prevent inconsistent pretrial rulings (especially
with respect to class certifications)"); In re Computervision Corp. Sec. Litig., 814 F. Supp. 85, 86
(J.P.M.L. 1993) (holding that transfer is necessary to prevent inconsistent pretrial rulings,
especially regarding class certification); In re Cement and Concrete Antitrust Litig., 437 F. Supp.
at 752 ("since duplicating or overlapping classes are sought in most of the actions, transfer to a
single district is desirable in order to avoid the possibility of inconsistent class determinations");
In re Roadway Express, Inc. Employment Practices Litig., 384 F. Supp. 612, 613 (J.P.M.L.
1974) (same).

Where, as here, consolidation and coordination will avoid duplicative discovery and
potentially conflicting pretrial rulings, transfer for pretrial purposes is warranted to promote the
interests of judicial economy and efficiency.

### B.    The Eastern District of Pennsylvania is the Proper Forum for Coordinated Pretrial Proceedings

Transfer and consolidation of multidistrict proceedings in a particular district is
appropriate where that district is the "center of gravity" of the litigation. In re Cigarette Antitrust
Litig., No. 1342, 2000 WL 1508296, at *1 (J.P.M.L. June 7, 2000); In re Washington Pub. Power
Supply Sys. Sec. Litig., 568 F. Supp. 1250, 1251-52 (J.P.M.L. 1983); In re Food Fair Sec. Litig.,
465 F. Supp. 1301, 1306 (J.P.M.L. 1979); In re West Coast Bakery Flour Antitrust Litig., 368 F.
Supp. 808, 809 (J.P.M.L. 1974). The factors to be considered in determining the center of
gravity include the preference of the majority of the parties; the pendency of related proceedings
in the proposed transferee district; the location of the parties, witnesses and documents; the
caseloads of the proposed transferor and transferee courts; and the expertise of a particular court
in the areas of law and procedure governing the litigation. See, e.g., In re Southeast Hotel Props.

P'ship Investor Litig., 796 F. Supp. 538, 539 (J.P.M.L. 1993); In re Computervision Corp., 814

F. Supp. at 86; In re Asbestos Prods. Liab. Litig. (No. VI), 771 F. Supp. 415, 422-23 (J.P.M.L.

1991); In re Vernitron Sec. Litig., 462 F. Supp. 391, 394 (J.P.M.L. 1978); In re General Aircraft

Corp. Antitrust/Tort Claims Act Litig., 449 F. Supp. 604, 606 (J.P.M.L. 1978); In re Wiring

Device Antitrust Litig., 444 F. Supp. 1348, 1350-51 (J.P.M.L. 1978); In re New Your City Mun.

Sec. Litig., 439 F. Supp. 267, 270 (J.P.M.L. 1977); In re Peruvian Road Litig., 380 F. Supp. 796,

798 (J.P.M.L. 1974); In re Sta-Power Indus. Sec. & Antitrust Litig., 372 F. Supp. 1398, 1399

(J.P.M.L. 1974).

These factors clearly support transfer to the Eastern District of Pennsylvania.

### 1.    A Clear Majority of the Plaintiffs Favor the Eastern District of Pennsylvania Where the Majority of the Cases are Pending

The forum choice of a majority of the plaintiffs is a key factor in determining competing

requests for transfer under 28 U.S.C. § 1407.  See In re Methionine Antitrust Litigation, MDL

Docket No. 1311, p. 2 (J.P.M.L. Dec. 8, 1999); In re Cutter Labs, Inc. "Braunwald-Cutter"

Aortic Heart Valve Prods. Liab. Litig., 465 F. Supp. 1295 (J.P.M.L. 1979); In re Wiring Device

Antitrust Litig., 444 F. Supp. 1348 (J.P.M.L. 1978).  Seven of the ten related actions have been

filed in the Eastern District of Pennsylvania, far more than any other district.  Indeed, no other

district has more than two cases pending.[2]

The Panel has consistently recognized a preference for a forum in which the majority of

related cases are pending.  See In re Phonometronics, Inc., Elec. Long Distance Call Cost

Computer and Recorder Patent Litig., No. 1141, 1997 WL 83673 (J.P.M.L. Feb. 19, 1997)

(transferring case to Southern District of Florida where twenty other cases already pending); see

---

[2] Two actions were filed in the Western District of Pennsylvania and a single action was filed in the District of New Jersey.  See Schedule A to Philadelphia Plaintiffs' Motion for Transfer and Consolidation.

also In re Asbestos Prods. Liab. Litig., 771 F. Supp. 415, 422-23 (J.P.M.L. 1991) (transferring thousands of cases to Eastern District of Pennsylvania based, in part, on majority of existing cases having been filed in Eastern District of Pennsylvania); In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig., 844 F. Supp 1553 (J.P.M.L. 1994) (transferring twenty-nine actions to District of Minnesota where over one hundred actions already pending); In re General Aircraft Corp. Antitrust/Tort Claims Act Litig., 449 F. Supp. 604, 606 (J.P.M.L. 1978) (transferring one action to district where another action pending based upon choice of majority of parties);  In re Investors Funding Corp. of N.Y. Sec. Litig., 437 F. Supp. 1199, 1203 (J.P.M.L. 1977) (holding that forum where defendant corporations were headquartered and where majority of actions already were pending was proper transferee court); In re Olympia Brewing Co. Antitrust Litig., 415 F. Supp. 398, 402 (J.P.M.L. 1976) (holding that transferee court was proper because vast majority of actions already pending there, pretrial proceedings further advanced there and most parties agreed that it was proper forum).

The majority of the related actions were commenced and are pending in the Eastern District of Pennsylvania and a majority of the plaintiffs favor this district.  Moreover, as set forth below, it is the most convenient forum for the parties, including defendants, and witnesses. Based on these facts, the Eastern District of Pennsylvania is the most appropriate transferee court.

2.      **The Grand Jury Investigating Price-Fixing in the Automotive Refinishing Paint Industry is Located in the Eastern District of Pennsylvania**

In choosing a transferee forum, this Panel has given great deference to the location of related government enforcement proceedings.  See In re Cuisinart Food Processor Antitrust Litig., 506 F. Supp. 651 (J.P.M.L. 1981).  See also In re Gas Meter Antitrust Litig., 464 F. Supp.

391 (J.P.M.L. 1979); In re Fine Paper Antitrust Litig., 446 F. Supp. 759 (J.P.M.L. 1978); In re

Corrugated Container Antitrust Litig., 441 F. Supp. 921 (J.P.M.L. 1977); In re Hawaiian Hotel

Room Rate Antitrust Litig., 438 F. Supp. 935 (J.P.M.L. 1977); In re Anthracite Coal Antitrust

Litig., 436 F. Supp. 402 (J.P.M.L. 1977): In re Folding Carton Antitrust Litig., 415 F. Supp. 384

(J.P.M.L. 1976).

In Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211 (1979), the Supreme Court

emphasized the importance of coordinating related civil and criminal proceedings.  This

coordination enables the court to organize discovery between the government, plaintiffs,

defendants, and third parties, in order to avoid unnecessary duplication and expense.  This Panel

stated in In re Toilet Seat Antitrust Litig., 387 F. Supp. 1342, 1344 (J.P.M.L. 1975):

> It is apparent that a great deal of coordination will be necessary
> between the discovery which all plaintiffs seek here and the
> proceedings in the United States' actions.  Tremendous success has
> been achieved in other multidistrict litigation, such as the
> Government Auto Fleet Litigation, through the cooperation of all
> the judges and parties involved in coordinating discovery in the
> private treble damage actions with that in the Government criminal
> and civil actions.

See also, In re Marine Constr. Antitrust Litig., 487 F. Supp 1355, 1357 (J.P.M.L. 1980); In re

California Armored Car Antitrust Litig., 476 F. Supp. 452 (J.P.M.L. 1979); In re Sugar Indus.

Antitrust Litig., 471 F. Supp. 1089 (J.P.M.L. 1979); In re South Cent. States Bakery Prods.

Antitrust Litig., 433 F. Supp. 1127 (J.P.M.L. 1977).

Here, the government's investigation is being run by the Department of Justice's

Philadelphia office, and the federal grand jury convened in connection therewith is also based in

Philadelphia.  The investigation is continuing and coordination with the related civil proceedings

is best accomplished in the same district, enabling all parties, including the government, to

proceed in a more efficient manner.  Moreover, the location of grand jury documents provides

another compelling reason to transfer the related actions to Philadelphia. The Panel has long

held that because parties will inevitably request discovery of grand jury documents and

transcripts, the district in which the grand jury is sitting is the most appropriate transferee

district. As stated by the Panel in In re Corrugated Container Antitrust Litig., 441 F. Supp. 921,

924 (J.P.M.L. 1977):

> Regardless of whether any indictments are handed down by the
> Houston grand jury, plaintiffs in the actions in MDL-310 in all
> likelihood will seek to discover the grand jury materials. Since
> these materials are under the custody and control of the Southern
> District of Texas, transfer to that forum will best facilitate any
> necessary coordination between the Government proceedings and
> the private actions.

Absent compelling circumstances to the contrary, none of which are present here, this

Panel has generally transferred actions to the district where the government action was

proceeding, and should do so in this case.

### 3.    The Eastern District of Pennsylvania is the Most Convenient Forum for the Parties and Witnesses

It is axiomatic that the convenience of the parties and witnesses is a critical factor in

determining to which district related actions should be transferred. 28 U.S.C. § 1407(a) (related

actions may be transferred to a district for coordinated proceedings upon a determination that the

transfer "will be for the convenience of parties and witnesses and will promote the just and

efficient conduct of such actions"). In deciding whether a particular forum is convenient, the

Panel frequently considers the location of the parties, documents and potential witnesses relative

to that district. See In re Cigarette Antitrust Litig., No. 1342, 2000 WL 1508296, at *1 (J.P.M.L.

June 7, 2000); In re Baldwin-United Corp. Litig., 581 F. Supp. 739, 740 (J.P.M.L. 1984) ("many

of the parties, potential witnesses and relevant documents are located in the Southern District of

New York (where defendant broker dealer firms have their principal offices and headquarters)");

- 12 -

In re IBP Confidential Bus. Documents Litig., 491 F. Supp. 1359, 1363 (J.P.M.L. 1980); In re California Armored Car Antitrust Litig., 476 F. Supp. 452, 455 (J.P.M.L. 1979).

The Eastern District of Pennsylvania is clearly the most convenient forum for the pretrial prosecution of these actions. As stated above, the government's investigation is being run by the Department of Justice's Philadelphia office, and the federal grand jury convened in connection with the investigation is also based in Philadelphia. As a result, the grand jury documents will be located and witnesses will likely be called upon to testify there. Moreover, Philadelphia is centrally located and readily accessible, making it convenient for the parties and witnesses and thus a preferable forum for this litigation. DuPont is headquartered in Wilmington, Delaware; BASF in New Jersey; PPG in Pittsburgh; Sherwin-Williams in Cleveland; and Akzo Nobel in Chicago. The majority of these defendants are located either in the immediate vicinity of or in close proximity to the Eastern District of Pennsylvania. In addition, several of the defendants are only a short automobile or train ride from Philadelphia, and those defendants traveling by air will have several direct non-stop routes from which to choose.

### 4.    The Eastern District of Pennsylvania Has Demonstrated Its Ability to Handle its Docket Efficiently

In selecting the most appropriate transferee forum for multidistrict litigation, the Panel considers the speed and efficiency with which alternative districts manage their respective caseloads. See In re Preferential Drug Prods. Pricing Antitrust Litig., 429 F.Supp. 1027, 1029 (J.P.M.L. 1977) (transferring cases based in part upon transferee court's low median time between filing and disposition in civil actions); In re Corn Derivatives Antitrust Litig., 486 F.Supp. 929, 932 (J.P.M.L. 1980) (faster docket cited as a consideration for situs of transfer). The record of the Eastern District of Pennsylvania with regard to the speed and efficiency with

which it manages its cases is unparalleled in the Third Circuit and ranks among the best in the nation.

Data from the Federal Court Management Statistics reveals that the Eastern District of Pennsylvania is best situated to provide an efficient disposition of these actions. The median time from filing to trial for civil cases in the Eastern District of Pennsylvania in 2000 was 15 months – the best figure in the Third Circuit and 9th best in the nation. In contrast, the median times for the Western District of Pennsylvania and the District of New Jersey were 23 and 27 months, respectively. In addition, the percentage of cases over three years old in the Eastern District of Pennsylvania for 2000 was 1.8, compared with 4.1 percent in the District of New Jersey and 4.5 percent in the Western District of Pennsylvania. See 2000 Federal Court Management Statistics, attached hereto as Exhibit B.

Additionally, the Eastern District of Pennsylvania has extensive experience in managing consolidated nationwide antitrust actions and other antitrust litigation. See In re Linerboard Antitrust Litig., MDL No. 1261; In re Graphite Electrodes Antitrust Litig., Master File No. 97-CV-4182; In re Plastic Cutlery Antitrust Litig., Master File No. 96-728; In re Residential Doors Antitrust Litig., MDL Docket No. 1039; In re Plastic Tableware Antitrust Litig., Master File No. 94-CV-3564; In re Painted Aluminum Antitrust Litig., Civil Action No. 95-CV-6557; Cumberland Farms, Inc., et al. v. Browning-Ferris Indus., Inc. et al., Civil Action No. 87-3717; In re Chlorine & Caustic Soda Antitrust Litig., Master File No. 86-5428. Indeed, the Panel has specifically recognized the Eastern District of Pennsylvania's experience in handling complex litigation. See In re Asbestos Prods. Liab. Litig. (No. VI), 771 F. Supp. 415, 423 (J.P.M.L. 1991) (in transferring related cases to Philadelphia, Panel relied on, *inter alia*, the fact that the Eastern District of Pennsylvania had "extensive experience in complex litigation").

- 14 -

## IV.   **CONCLUSION**

Based on an analysis of the factors relevant to the Panel's determination, the Eastern

District of Pennsylvania is the most appropriate forum for the coordination or consolidation of

this litigation.

Dated:  June 27, 2001

Respectfully submitted,

Leonard Barrack
Steven A. Asher
Jeffrey B. Gittleman
Joseph H. Meltzer
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
(215) 963-0600

**Attorneys for Plaintiff Golden Motors,
Inc. t/a Golden Chrysler Plymouth**

Warren Rubin
**LAW OFFICES OF
   BERNARD M. GROSS, P.C.**
1500 Walnut Street
Sixth Floor
Philadelphia, PA  19102
(215) 561-3600

**Attorneys for Plaintiff Car Color & Auto
Body Supply Ltd.**

Joseph C. Kohn
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, PA  19107
(215) 238-1700

**Attorneys for Plaintiff Sajon Investments,
Inc. d/b/a Greensboro Body Co.**


Dianne M. Nast
**RODA AND NAST, P.C.**
801 Estelle Drive
Lancaster, PA  19601

**Attorneys for Plaintiff Randall Boltz
d/b/a Randy's Paint & Body Werkes**


Richard A. Lockridge
W. Joseph Bruckner
**LOCKRIDGE GRINDAL
    NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401

**Attorneys for Plaintiff Howard J. Walters
d/b/a Randolph Auto Supply Co.**

| NAME OF ACTION | DATE FILED | DISTRICT COURT | CIVIL ACTION NUMBER | ASSIGNED JUDGE |
|---|---|---|---|---|
| Car Color & Auto Body Supply Ltd., on behalf of itself and all others similarly situated, v. PPG Industries, Inc.,  E.I. DuPont De Nemours and Co., Sherwin-Williams Co., BASF Aktiengesellschaft, BASF Corporation, Akzo Nobel N.V., Akzo Nobel Inc. | June 8, 2001 | Eastern District of Pennsylvania | 01-cv-2830 | Hon. R. Barclay Surrick |
| Golden Motors, Inc. t/a Golden Chrysler Plymouth Jeep, on behalf of itself and all others similarly situated, v. PPG Industries, Inc., E.I. DuPont De Nemours and Co., Sherwin-Williams Co., BASF Aktiengesellschaft, BASF Corporation, Akzo Nobel N.V., Akzo Nobel Inc. | June 12, 2001 | Eastern District of Pennsylvania | 01-cv-2906 | Hon. R. Barclay Surrick |
| Charles Lessard d/b/a Lessard's Auto Body, on behalf of itself and all others similarly situated, v. PPG Industries, Inc. Akzo Nobel NV, Akzo Nobel, Inc., Akzo Nobel Coatings, Inc., BASF Aktiengesellschaft,  BASF Corporation,  E.I. DuPont De Nemours and Co., Sherwin-Williams Co., Sherwin-Williams Automotive Finishes Corp. | June 15, 2001 | Eastern District of Pennsylvania | 01-cv-2983 | Hon. R. Barclay Surrick |

| NAME OF ACTION | DATE FILED | DISTRICT COURT | CIVIL ACTION NUMBER | ASSIGNED JUDGE |
|---|---|---|---|---|
| Randall Boltz d/b/a Randy's Paint and Body Werkes, on behalf of itself and all others similarly situated, v. PPG Industries, Inc., E.I. DuPont De Nemours and Co., Sherwin-Williams Co., BASF Aktiengesellschaft, BASF Corporation, Akzo Nobel N.V., Akzo Nobel Inc. | June 18, 2001 | Eastern District of Pennsylvania | 01-cv-3020 | Hon. R. Barclay Surrick |
| Yuri Shneyder, on behalf of himself and all others similarly situated, v. PPG Industries, Inc., Akzo Nobel NV, Akzo Nobel, Inc., Akzo Nobel Coatings, Inc., BASF Aktiengesellschaft, BASF Corporation, E.I. DuPont De Nemours and Co., Sherwin-Williams Co., Sherwin-Williams Automotive Finishes Corp. | June 21, 2001 | Eastern District of Pennsylvania | 01-cv-3105 | Hon. R. Barclay Surrick |
| Sajon Investments, Inc. d/b/a Greensboro Body Co., on behalf of itself and all others similarly situated, v. PPG Industries, Inc., E.I. DuPont De Nemours and Co., Sherwin-Williams Co., BASF Aktiengesellschaft, BASF Corporation, Akzo Nobel N.V, Akzo Nobel Inc. | June 25, 2001 | Eastern District of Pennsylvania | 01-cv-3174 | Hon. R. Barclay Surrick |

**SCHEDULE A**

| NAME OF ACTION | DATE FILED | DISTRICT COURT | CIVIL ACTION NUMBER | ASSIGNED JUDGE |
|---|---|---|---|---|
| Howard J. Walters, d/b/a Randolph Auto Supply Co., on behalf of itself and all others similarly situated, v. PPG Industries, Inc., E.I. DuPont De Nemours and Co., Sherwin-Williams Co., BASF Aktiengesellschaft, BASF Corporation, Akzo Nobel N.V, Akzo Nobel Inc. | June 26, 2001 | Eastern District of Pennsylvania | 01-cv-3206 | Hon. R. Barclay Surrick |
| Peter Sahagian, d/b/a Sahagian's Collision Repair Center, on behalf of himself and all others similarly situated, v. PPG Industries, Inc., Akzo Nobel NV, Akzo Nobel, Inc., Akzo Nobel Coatings, Inc., BASF Aktiengesellschaft, BASF Corporation, E.I. DuPont De Nemours and Co., Sherwin-Williams Co., Sherwin-Williams Automotive Finishes Corp. | June 22, 2001 | Western District of Pennsylvania | 01-cv-1159 | Hon. Donald E. Ziegler |
| Automotive Body & Tire Center, Inc. on behalf of itself and all others similarly situated v. DuPont Performance Coatings, Inc., Akzo Nobel NV, Akzo Nobel, Inc., Akzo Nobel Coatings, Inc., BASF Aktiengesellschaft, BASF Corporation, | June 25, 2001 | Western District of Pennsylvania | 01-cv-1173 | Hon. Donald E. Ziegler |
| Autobody by Caldwell, Inc., on behalf of itself and all others similarly situated, v. PPG Industries, Inc., E.I. DuPont de Nemours and Co., Sherwin-Williams Co., BASF AG, BASF Corporation, BASF Coatings AG, Akzo Nobel N.V., Akzo Nobel Inc., Akzo Nobel Coatings, Inc. | June 15, 2001 | District of New Jersey | 01-cv-2898 | Hon. William H. Walls |

Exhibit A

Body shops charge price-fixing by makers of auto paint - Asbury Park Press                   Page 1 of 2

# ASBURY PARK ❀ PRESS  IN JERSEY

### Bob Franks: Professional Politician!
Paid for by Schundler for Governor, Inc.



June 20, 2001                                                    Story Search [        ] GO



## Body shops charge price-fixing by makers of auto paint        Go Back

**Published in the Asbury Park Press**

THE ASSOCIATED PRESS

NEWARK -- On the heels of reports of a federal antitrust investigation, auto body shops are accusing the world's five largest paint makers of price-fixing.

The shops paid "artificially inflated prices" for refinishing products, according to a class-action lawsuit seeking money damages and a court injunction barring collusion.

The paint makers have acknowledged the Justice Department investigation, based in Philadelphia, and denied wrongdoing.

The companies allegedly agreed to fix prices during a meeting in Europe five years ago, according to the March issue of Hammer and Dolly, a Washington, D.C., trade journal for the auto body industry, which cited an unnamed source.

Accused in the lawsuit are: PPG Industries Inc. of Pittsburgh; The Sherwin-Williams Co. of Cleveland; DuPont Co. of Wilmington, Del.; BASF AG of Germany, which has its U.S. subsidiary in Mount Olive, N.J.; and Akzo Novel NV of the Netherlands, which has U.S. bases in Chicago and Norcross, Ga.

"The antitrust division is looking at the possibility of anticompetitive practices in the automotive refinishing industry," Justice Department spokeswoman Gina Talamona said Wednesday. She said she could not discuss what companies were being examined.

The named plaintiff in the lawsuit, filed Tuesday in U.S. District Court in Newark, is Autobody by Caldwell Inc., a shop in Laguna Hills, Calif.

Owner Jack Caldwell, in business for 22 years, said his two painting booths are in continuos use, and he hopes the lawsuit reduces his costs.

"I'm angry with these folks," Caldwell said Wednesday. "They've jacked up prices every year, year in, year out, as far back as I can remember. There's no justification for it, except for greed."

PPG spokesman John S. Ruch said its internal investigation found no

Body shops charge price-fixing by makers of auto paint - Asbury Park Press                    Page 2 of 2

wrongdoing.

© copyright 2001 The Associated Press

**For a complete report on this story, see the Asbury Park Press tomorrow.**
Published on June 20, 2001

Copyright 1997-2001 INJersey.
Use of this site signifies your agreement to the Terms of Service (updated 4/21/00).
Site design by INJersey.

Exhibit B

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **PENNSYLVANIA EASTERN** | | | 2000 | 1999 | 1998 | 1997 | 1996 | 1995 | | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | | Filings* | 9,255 | 8,484 | 9,260 | 10,013 | 9,720 | 9,078 | | |
| | | Terminations | 7,754 | 8,764 | 9,647 | 8,651 | 9,198 | 8,511 | | |
| | | Pending | 8,661 | 7,134 | 7,571 | 7,775 | 6,304 | 5,821 | | |
| | % Change in Total Filings | Over Last Year | | 9.1 | | | | | 28 | 4 |
| | | Over Earlier Years | | | -.1 | -7.6 | -4.8 | 1.9 | 58 | 5 |
| Number of Judgeships | | | 22 | 22 | 22 | 23 | 23 | 23 | | |
| Vacant Judgeship Months** | | | 71.6 | 59.2 | 39.6 | 29.6 | 8.8 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 421 | 386 | 421 | 435 | 423 | 395 | 56 | 3 |
| | | Civil | 389 | 354 | 392 | 409 | 397 | 370 | 42 | 2 |
| | | Criminal Felony | 32 | 32 | 29 | 26 | 26 | 25 | 84 | 4 |
| | Pending Cases | | 394 | 324 | 344 | 338 | 274 | 253 | 40 | 2 |
| | Weighted Filings** | | 371 | 381 | 389 | 390 | 376 | 405 | 71 | 3 |
| | 95% Confidence | Upper | 396 | 409 | 421 | 421 | 405 | 437 | | |
| | | Lower | 345 | 354 | 356 | 360 | 347 | 372 | | |
| | Terminations | | 352 | 398 | 439 | 376 | 400 | 370 | 71 | 4 |
| | Trials Completed | | 14 | 14 | 20 | 21 | 22 | 23 | 77 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 8.5 | 8.6 | 8.9 | 8.4 | 9.5 | 7.7 | 69 | 4 |
| | | Civil** | 7.8 | 8.1 | 8.9 | 6.2 | 6.9 | 6.8 | 16 | 1 |
| | From Filing to Trial** (Civil Only) | | 15 | 14 | 12 | 13 | 12 | 12 | 11 | 1 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 138 | 66 | 311 | 106 | 76 | 56 | | |
| | | Percentage | 1.8 | 1.0 | 4.5 | 1.5 | 1.3 | 1.1 | 20 | 1 |
| | Average Number of Felony Defendants Filed Per Case | | 1.6 | 1.7 | 1.6 | 1.6 | 1.6 | 1.6 | | |
| | Jurors | Avg. Present for Jury Selection | 60.24 | 54.74 | 56.87 | 48.54 | 52.42 | 53.44 | | |
| | | Percent Not Selected or Challenged | 41.4 | 39.8 | 41.6 | 33.8 | 39.0 | 39.1 | | |

| 2000 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 8548 | 346 | 263 | 1221 | 33 | 78 | 417 | 1089 | 2824 | 212 | 1401 | 34 | 630 |
| Criminal* | 693 | 22 | 24 | 147 | 6 | 32 | 201 | ** | 23 | 151 | 2 | 28 | 57 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.

\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **NEW JERSEY** | | | 2000 | 1999 | 1998 | 1997 | 1996 | 1995 | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | | 7,203 | 7,049 | 6,949 | 7,151 | 7,047 | 7,495 | | |
| | Terminations | | 7,161 | 6,925 | 7,179 | 7,154 | 7,280 | 7,016 | | |
| | Pending | | 6,181 | 6,174 | 6,134 | 6,349 | 6,382 | 6,650 | | |
| | % Change in Total Filings | Over Last Year | | 2.2 | | | | | 49 | 5 |
| | | Over Earlier Years | | | 3.7 | .7 | 2.2 | -3.9 | 75 | 6 |
| | Number of Judgeships | | 17 | 17 | 17 | 17 | 17 | 17 | | |
| | Vacant Judgeship Months** | | 6.0 | 12.6 | 5.1 | 12.0 | 27.8 | 36.4 | | |
| **ACTIONS PER JUDGESHIP** | FILINGS | Total | 424 | 415 | 409 | 421 | 415 | 441 | 55 | 2 |
| | | Civil | 381 | 376 | 370 | 383 | 376 | 405 | 46 | 3 |
| | | Criminal Felony | 43 | 39 | 39 | 38 | 39 | 36 | 72 | 3 |
| | Pending Cases | | 364 | 363 | 361 | 373 | 375 | 391 | 50 | 4 |
| | Weighted Filings** | | 421 | 407 | 428 | 433 | 423 | 449 | 57 | 2 |
| | 95% Confidence | Upper | 450 | 436 | 461 | 464 | 453 | 486 | | |
| | | Lower | 391 | 378 | 396 | 403 | 393 | 413 | | |
| | Terminations | | 421 | 407 | 422 | 421 | 428 | 413 | 56 | 2 |
| | Trials Completed | | 15 | 16 | 18 | 17 | 18 | 20 | 74 | 4 |
| **MEDIAN TIMES (months)** | From Filing to Disposition | Criminal Felony | 8.6 | 8.9 | 8.5 | 8.8 | 8.0 | 8.0 | 70 | 5 |
| | | Civil** | 8.0 | 7.1 | 8.3 | 8.4 | 7.1 | 7.2 | 21 | 2 |
| | From Filing to Trial** (Civil Only) | | 27 | 27 | 26 | 28 | 24 | 25 | 74 | 5 |
| **OTHER** | Civil Cases Over 3 Years Old** | Number | 225 | 224 | 255 | 267 | 309 | 292 | | |
| | | Percentage | 4.1 | 4.1 | 4.7 | 4.6 | 5.3 | 4.8 | 59 | 3 |
| | Average Number of Felony Defendants Filed Per Case | | 1.4 | 1.3 | 1.5 | 1.4 | 1.4 | 1.5 | | |
| | Jurors | Avg. Present for Jury Selection | 40.67 | 42.78 | 37.72 | 45.36 | 52.47 | 53.24 | | |
| | | Percent Not Selected or Challenged | 39.0 | 30.0 | 32.3 | 35.8 | 47.2 | 44.5 | | |

| 2000 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6485 | 282 | 441 | 1058 | 87 | 30 | 513 | 1267 | 929 | 296 | 937 | 33 | 612 |
| Criminal* | 701 | 29 | 15 | 95 | 3 | 30 | 189 | ** | 25 | 213 | 2 | 19 | 81 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **PENNSYLVANIA WESTERN** | | | 2000 | 1999 | 1998 | 1997 | 1996 | 1995 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 3,572 | 3,214 | 3,289 | 3,478 | 3,412 | 3,111 | | |
| | Terminations | | 3,406 | 3,201 | 3,317 | 3,188 | 3,212 | 3,120 | | |
| | Pending | | 3,329 | 3,160 | 3,150 | 3,179 | 2,913 | 2,735 | | |
| | % Change in Total Filings | Over Last Year | 11.1 | | | | | | 22 | 3 |
| | | Over Earlier Years | | 8.6 | 2.7 | 4.7 | 14.8 | | 29 | 3 |
| | Number of Judgeships | | 10 | 10 | 10 | 10 | 10 | 10 | | |
| | Vacant Judgeship Months** | | 29.7 | 24.0 | 24.0 | 17.6 | 12.0 | 10.8 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 357 | 321 | 329 | 348 | 341 | 311 | 71 | 4 |
| | | Civil | 328 | 297 | 304 | 324 | 317 | 287 | 63 | 4 |
| | | Criminal Felony | 29 | 24 | 25 | 24 | 24 | 24 | 89 | 5 |
| | Pending Cases | | 333 | 316 | 315 | 318 | 291 | 274 | 63 | 6 |
| | Weighted Filings** | | 337 | 294 | 307 | 335 | 321 | 318 | 76 | 4 |
| | 95% Confidence | Upper | 362 | 315 | 331 | 361 | 345 | 341 | | |
| | | Lower | 311 | 272 | 284 | 309 | 296 | 295 | | |
| | Terminations | | 341 | 320 | 332 | 319 | 321 | 312 | 74 | 5 |
| | Trials Completed | | 17 | 18 | 21 | 20 | 20 | 20 | 64 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 7.8 | 6.6 | 7.5 | 6.0 | 7.0 | 6.1 | 58 | 3 |
| | | Civil** | 9.7 | 10.2 | 9.9 | 8.4 | 8.8 | 9.0 | 47 | 4 |
| | From Filing to Trial** (Civil Only) | | 23 | 26 | 26 | 23 | 25 | 22 | 62 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 139 | 173 | 179 | 144 | 120 | 106 | | |
| | | Percentage | 4.5 | 5.8 | 6.0 | 4.8 | 4.3 | 4.1 | 63 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.4 | 1.4 | 1.4 | 1.7 | 1.3 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 42.93 | 36.98 | 32.00 | 35.59 | 33.23 | 42.16 | | |
| | | Percent Not Selected or Challenged | 49.4 | 42.8 | 38.8 | 41.2 | 36.0 | 36.5 | | |

| 2000 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3278 | 458 | 308 | 567 | 37 | 111 | 202 | 361 | 317 | 56 | 637 | 7 | 217 |
| Criminal* | 291 | 2 | 25 | 31 | 8 | 12 | 94 | ** | 10 | 59 | 2 | 16 | 32 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.

\*\* See "Explanation of Selected Terms."

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL - 5 2001

FILED
CLERK'S OFFICE

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of June 2001, copies of the revised Schedule

A to the Motion of Philadelphia Plaintiffs For Transfer and Consolidation Pursuant to 28 U.S.C.

§ 1407 were served upon the following by the means set forth below:

## VIA UNITED STATES FIRST CLASS MAIL, POSTAGE PREPAID

Clerk of the Court
United States District Court
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106-1797

Clerk of the Court
United States District Court
District of New Jersey
U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07101

Clerk of the Court
United States District Court
Western District of Pennsylvania
829 U. S. Courthouse
Pittsburgh, PA 15219

Alfred G. Yates, Jr.
Law Offices of Alfred G. Yates, Jr.
429 Forbes Avenue
519 Allegheny Building
Pittsburgh, PA  15219

Steven E. Cauley
Cauley, Geller, Bowman & Coates
11311 Arcade Drive
Suite 200
Little Rock, AR  72212

**Attorneys for Peter Sahagian d/b/a**
**Sahagian's Collision Repair Center**

David J. Bershad
Milberg Weiss Bershad
  Hynes & Lerach LLP
One Pennsylvania Plaza
New York, NY  10119

Shpetim Ademi
Ademi & O'Reilly
3181 South 27th Street
Milwaukee, Wisconsin  53215

**Attorneys for Charles Lessard d/b/a
Lessard's Auto Body**

Joseph J. De Palma
Lite DePalma Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, NJ  07102

Solomon B. Cera
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA  94105

**Attorneys for Autobody by
Caldwell, Inc.**

Howard Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106

David J. Manogue
Specter, Specter, Evans & Manogue
Koppers Building, 26th Floor
Pittsburgh, PA  15219

**Attorneys for Automotive Body
& Tire Center, Inc.**

Warren Rubin, Esquire
Law Offices of Bernard M. Gross, P.C.
1500 Walnut Street
6th Floor
Philadelphia, PA  19102

Larry S. Keiser, Esquire
Chariton & Keiser, LLP
138 S. Main Street
P.O. Box 220
Wilkes-Barre, PA 18703

**Attorneys for Car Color and
Auto Body Supply Ltd.**

Steven A. Asher, Esquire
Barrack Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103

Richard L. Creighton, Jr., Esquire
Keating, Muething & Klekamp, PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, OH  45202

Martin Chitwood, Esquire
Chitwood & Harley
2900 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA  30309

**Attorneys for Golden Motors, Inc. t/a
Golden Chrysler Plymouth Jeep**

Richard A. Lockridge, Esquire
W. Joseph Bruckner
Lockridge Grindal Nauen, PLLP
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401

Paul O. Paradis
Wolf Popper LLP
845 Third Avenue
New York, NY  10022

**Attorneys for Howard J. Walters d/b/a
Randolph Auto Supply Co.**


Joseph C. Kohn, Esquire
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107

**Attorneys for Sajon Investments, Inc.
d/b/a Greensboro Body Co.**


Dianne Nast, Esquire
Roda & Nast, P.C.
801 Estelle Drive
Lancaster, PA  19601-2103

**Attorneys for Randall Boltz d/b/a
Randy's Paint & Body Werkes**


Richard S. Schiffrin
Schiffrin & Barroway, LLP
3 Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004

**Attorneys for Yuri Shneyder**

PPG Industries, Inc.
One PPG Place
Pittsburgh, PA  15222

E.I. DuPont de Nemours and Company
1007 Market Street
Wilmington, DE  19801

Akzo Nobel, Inc.
300 South Riverside Plaza
Chicago, IL  60606

Akzo Nobel Coatings, Inc.
555 Spalding Drive
Norcross, GA  30092

Sherwin-Williams Company
101 Prospect Avenue, N.W.
Cleveland, OH  44115

Sherwin-Williams Automotive Finishes Corp.
4440 Warrensville Center Road
Warrensville Heights, OH  44128

BASF Corporation
3000 Continental Drive North
Mount Olive, NJ  07828


**VIA AIRMAIL**

Akzo Nobel N.V.
76 Velperweg
6824 BM Arnhem
The Netherlands


BASF Aktiengesellschaft
Carl Bosch Strasse 38
Ludwigshafen, Germany


Dated: June 29, 2001

Joseph H. Meltzer

- 5 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of June 2001, copies of the Motion of Philadelphia Plaintiffs For Transfer and Consolidation Pursuant to 28 U.S.C. § 1407; and Philadelphia Plaintiffs' Memorandum of Law in Support of Motion for Transfer and Consolidation of Related Antitrust Actions to the Eastern District of Pennsylvania were served upon the following by the means set forth below:

### VIA UNITED STATES FIRST CLASS MAIL, POSTAGE PREPAID

Sherwin-Williams Automotive Finishes Corp.
4440 Warrensville Center Road
Warrensville Heights, OH  44128

Akzo Nobel Coatings, Inc.
555 Spalding Drive
Norcross, GA  30092

### VIA AIRMAIL

Akzo Nobel N.V.
76 Velperweg
6824 BM Arnhem
The Netherlands

BASF Aktiengesellschaft
Carl Bosch Strasse 38
Ludwigshafen, Germany

Dated: June 29, 2001

Joseph H. Meltzer